**THE PEOPLE**

v.

**ALFRED LEONARD**

District Court of the Virgin Islands

Fredericksted Sub-Judicial District
St. Croix

October 6, 1926

WILLIAMS, *Judge*

In response to the request of counsel for defendant, I am herein submitting my reasons for reaching the Findings of Fact and Conclusions of Law heretofore filed in this case:

It appears from the testimony that the defendant is a British subject and a resident of Tortola, one of the neighboring British islands, and that he and his family, including his mother, owned the sloop Olympia, of which he was captain and over which he had general control for business purposes; that they carried cargo of one kind or another between the various islands in this group, to wit, the British and American Virgin Islands; that the said sloop is a sloop of about six tons burden, without full deck covering and sloop rigged, and is a common type in use in these waters; that amongst other cargo charcoal forms one of the principal articles of transportation; that this cargo is carried in bags as well as loose; that on this occasion there were a few bags of charcoal but the bulk thereof was loose; that this character of cargo afforded splendid covering and protection for contraband liquor and that it has many times been used for that purpose.

That said sloop arrived in this jurisdiction, to wit, Frederiksted, St. Croix, a little before noon on Wednesday, the 29th September, 1926, and that unloading was commenced in the afternoon but not concluded; that about 6 o'clock they were told to cast off and take their moor-

ing, which they did, some forty or fifty feet from the dock, as was customary in such circumstances and as the other boats there at the time did; that the manifest of said sloop was submitted to the Customs Department but contained only the legitimate contents of said sloop, no contraband appearing thereon; that the said customs collector, Christopher Daniel, being familiar with the defendant and knowing him for many years and fully acquainted with his conduct and demeanor on many previous occasions, observed that he was in a highly nervous state, and apparently very much excited and under great strain, which together with his general conduct attracted his suspicion, and the said collector thereupon kept a watch out for any peculiar actions on the part of the sloop during the night; that he noticed that the sloop changed her mooring and went out to a point about one hundred yards beyond the first mooring, the other boats remaining in their same position; that this circumstance further aroused his suspicion and he took bearings from two points in town, one to the north and one to the south thereof, thereby enabling him to locate the spot and the location of said sloop; that on the following morning he notified the Police Department of his observations and he, together with representatives of said department, went out to the spot as indicated by the bearings which he had taken, and with the use of a water glass, observed two bags at the bottom, at a depth of about twenty feet; that divers were sent down and rescued the bags and contents which contained the liquor as set forth in the information and findings of fact. This incident is testified to by members of the Police Department and corroborated by them, both as to the circumstances and as to the liquor, character and contents of which were admitted by the defendant, while he denied that he had anything to do with it or knew anything

113

about it, as testified to by the Police Officers who made the preliminary investigation.

That as the various law and customs officers were of the impression and opinion that the liquor law was being violated at this point, a rather strict watch has been kept, which accounts for the sedulous precaution of the customs collector.

That a brother of the said defendant, namely, Ezeckiel Leonard, testified that the liquor was on board the sloop when it arrived in the jurisdiction of the Virgin Islands and that it was thrown overboard on Wednesday night the 29th, after the sloop had taken to her second mooring with the idea of rescuing the same after the cargo had been fully removed. He further testified that the liquor belonged to his brother and was controlled by him, his brother, the defendant, and that they had all taken a drink from one of the bottles before the same were thrown overboard.

It may be remarked that the brother of defendant was held in conjunction with the defendant for the violation of the National Prohibition Act (Oct. 28, 1919, ch. 85, Title II, § 21, 41 Stat. 314; 27 U.S.C. § 33) in the instant matter, and might therefore be biased in his testimony. It will be recalled that I admonished the witness repeatedly and emphatically that he was not supposed to tell anything but the truth under any circumstance, and particularly, that it would be a reprehensible thing to testify to false facts against his brother to get himself out of difficulties. He insisted that he was not testifying untruely but that the liquor was the property and under the control of the defendant.

There can be no doubt, it seems to me, about the fact that the liquor was dropped overboard from the sloop Olympia, and, if this is so, there has been a most curious combination of circumstances. It seems to me that no

114

rational mind could come to any other fair conclusion, but, on the other hand, any reasonable minded person would naturally come to the conclusion, beyond a reasonable doubt, that that liquor had formerly been aboard the said sloop, and I furthermore believe that there can be no doubt about the fact that the defendant had at least a part ownership in said liquor and was responsible for its disposal. His personal conduct and the action in placing the sloop out of the mooring in which she was at, while the other boats remained there and while there appeared to be no reason for such action, and the liquor being found at the exact spot, the next morning, where the sloop went after leaving the mooring, coupled him up with the control of the liquor. It seems to be clear that this maneuver of his and the sloop was in furtherance of the scheme to violate the liquor laws of this community. Certainly, at any rate, a jury would be justified in drawing the conclusion that the defendant was keeping the liquor on board the sloop, and this beyond a reasonable doubt; in other words, if a jury, on this evidence, had found the defendant guilty, it could not be said that there was not sufficient evidence to sustain the verdict. Certainly a prima facie case was made out and no testimony was offered on the part of the defendant whatsoever. The circumstances lead directly to the captain and are as convincing as most cases that come before the courts, and a conviction arising therefrom may well be considered as being beyond a reasonable doubt. For these reasons the defendant has been found guilty as charged in the information.